# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GARY ALVA THATCHER,

      Petitioner,                  Civil No. 03-74585-DT
                                  HONORABLE JOHN CORBETT O'MEARA
v.                            UNITED STATES DISTRICT JUDGE

KENNETH ROMANOWSKI,

      Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Gary Alva Thatcher, ("petitioner"), presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction and sentence on four counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(a). For the reasons stated below, the petition for writ of habeas corpus is **DENIED**.

## I. BACKGROUND

Petitioner was convicted of the above offenses following a bench trial in the Eaton County Circuit Court.

The victim, petitioner's ten year old stepdaughter, testified that petitioner sexually penetrated her on several occasions, both digitally and with his penis. The victim also testified that petitioner performed cunnilingus on her on several occasions. The victim testified that she tried to tell her mother what petitioner was doing, but petitioner would be

1

present and would tell her that she was wrong.  Petitioner also warned the victim that if she told anyone about the sexual abuse, he would spank her until she could not sit down. Petitioner also threatened to kill the victim with a sword.

The victim's natural father, William Woodbury, testified that on the weekend of April 6, 2001, the victim was visiting his house.  While going to the bathroom in the middle of the night, he overheard the victim screaming, "no, leave me alone, ow, that hurts."  The following morning, Woodbury asked the victim who had been "messing" with her.  The victim asked, "Who told you?"  She then began crying and asked to speak with her paternal grandmother, Linda Hill.  The victim did not tell her natural father about the sexual abuse.

Linda Hill testified that her son called her during spring break and informed her that the victim was having nightmares, would not talk to him, and requested to speak with Hill. Hill arrived at her son's home and found the victim upset.  The victim eventually told Hill that petitioner had hurt her private parts, was putting his d-i-c-k into her, and was having s-e-x with her [Hill testified that the victim spelled these words out].  Hill immediately called the police.

Diana Kay, a child protective services worker, assisted Detective Jeff Lutz in the initial police call.  Kay described the victim as being very distraught during the interview and believed that the victim was responding naturally for a child who had been traumatized.

Brian Brownell was also a child protective services worker who participated in a subsequent interview with the victim.  During the interview, the victim was able to verbalize that something had happened to her and that it was a problem for her.  Although the victim

2

had difficulty describing what had taken place, she was able to draw stick people and draw the areas on the stick people as to what she meant.  The victim appeared embarrassed by what they were discussing.

Dr. Steven Guertin was qualified by the trial court as an expert in child sexual and physical abuse.  Dr. Guertin examined the victim.  The victim told Dr. Guertin that something had happened in her bedroom with her stepfather, Gary Thatcher, and that it happened more than once.  The victim told Dr. Guertin that no one observed the sexual abuse, because her mother was at work.  The victim later told Dr. Guertin that petitioner had placed it [his penis] in her vagina, and moved up and down.  The victim said that this took place on seven or eight occasions.

Dr. Guertin testified that the victim did not mention any acts of cunnilingus or digital penetration during the interview, but stated that it was common for children to reveal things in a "stuttery" way, remembering one thing about one incident, and one thing about another one.

Dr. Guertin testified that he examined the victim and found that she had a focal area at the bottom of her hymen that would be consistent with either digital or penile penetration. Dr. Guertin opined that this physical finding could be a healed area of the hymen that was consistent with intercourse or attempted intercourse.

Detective Jeff Lutz of the Eaton County Sheriff Department testified that he initially contacted petitioner at his house.  Detective Lutz told petitioner that he needed to talk with him about allegations of inappropriate touching.  Because of the household distractions and

the sensitive nature of the investigation, Lutz asked petitioner if he would come to the Nashville Police Department or the Eaton County Sheriff Department for an interview. Petitioner chose to follow Lutz over to the police department in his own vehicle. Prior to interviewing petitioner, Lutz did not advise petitioner of his *Miranda* rights. Lutz testified, however, that he advised petitioner that he was free to go, and no matter what he told the police, he would be free to leave the police station that day. Petitioner agreed to speak with Lutz.

Petitioner initially denied the victim's accusations, but gradually began making admissions to Detective Lutz. Petitioner admitted that he had given the victim a shower, during which she complained that he had touched her private area. Petitioner denied touching the victim's private parts, although he thought that he might have touched her with the washcloth that he was using. Petitioner further indicated that the victim would sit on his lap and try and grab his penis. Petitioner informed Lutz that on one occasion, he became aroused when the victim touched his penis. Petitioner also described three incidents, in which he woke up to find the victim lying naked in bed with him. Petitioner also told Lutz that he had fantasized sexually about the victim, but denied acting upon these fantasies. Petitioner told Lutz that on one occasion, while dreaming about making love to his wife, he woke up to find the victim lying on top of him naked. Petitioner claimed that he immediately pushed the victim off and ran to the bathroom. Petitioner indicated that his penis was erect, that he could have ejaculated, and that his underwear was wet. When Lutz asked petitioner if he could have had sex with the victim on this occasion, he said yes. Petitioner told Lutz

4

of two other incidents in which he had been sleeping, either in his bed or on the couch in the living room, in which he awoke to find the victim lying naked, either on top of him or next to him. Petitioner admitted that he did not tell his wife about these incidents, because he was afraid that she would think that he was molesting the victim.

Michigan State Police Trooper Geoffrey Flohr assisted Detective Lutz with a second interview of petitioner. Trooper Flohr was alone with petitioner when he interviewed him. Prior to the interview, Flohr informed petitioner of his *Miranda* rights. Petitioner indicated that he understood these rights and agreed to speak with Flohr. Petitioner initially denied any sexual contact with the victim, but later admitted to some acts of sexual penetration with the victim. Trooper Flohr's interview with petitioner was videotaped. Over defense counsel's objection, the trial court allowed the prosecution to play the videotape of petitioner's confession in court.

Petitioner presented a number of family members or friends as defense witnesses. These witnesses testified that they believed the victim to be a liar or a dishonest person. Petitioner's mother, Nancy Rockford, testified that the victim had falsely accused two people in the past of sexually abusing her.

Petitioner's conviction was affirmed on appeal. *People v. Thatcher*, 238361 (Mich.Ct.App. September 9, 2003); *lv. den.* 469 Mich. 990; 674 N.W. 2d 156 (2003).[1]

---

[1] This Court initially dismissed petitioner's habeas corpus petition without prejudice on exhaustion grounds, because petitioner's application for leave to appeal was pending before the Michigan Supreme Court when he originally filed his habeas petition. *See Thatcher v. Romanowski,* 2003 WL 22902300 (E.D. Mich. November 24, 2003). On July 30, 2004, This Court granted petitioner's motion to reinstate his habeas petition following the denial of his application for leave to appeal by the Michigan Supreme Court. [*See* Court Dkt. Entry # 9].

Petitioner seeks the issuance of a writ of habeas corpus on the following grounds:

I.  Petitioner was denied his federally protected constitutional rights of the V, XIV Amendments that are "due process of law, equal protection of law, and trial by impartial jury."

II.  Petitioner was denied his federally protected constitutional rights of the VI, XIV Amendments that are the right to effective assistance of counsel; and due process of law.

## II.  <u>STANDARD OF REVIEW</u>

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that

6

the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  DISCUSSION

**A.  The Court will grant Petitioner's Motion to Sight (sic) Case Law.**

After filing his initial petition for writ of habeas corpus, petitioner filed a motion to sight (sic) case law. [Court Dkt. Entry # 12].  Because petitioner is proceeding *pro se*, this Court would be willing to treat petitioner's brief or memorandum of law as incorporated into his original petition. *See Meatley v. Artuz*, 886 F. Supp. 1009, 1011 (E.D.N.Y. 1995). Accordingly, the motion to cite case law is **GRANTED**.

**B.  The Court will deny petitioner's Motion to Invoke FRAP 23 (c).**

Petitioner has also filed a motion to invoke Rule 23 (c) of Federal Rules of Appellate Procedure, in which he seeks release on bond [Court Dkt Entry # 27].

This Court initially notes that the Federal Rules of Appellate Procedure do not apply to actions in a district court. *Rawson v. Sears, Roebuck & Co.*, 678 F. Supp. 820, 822 (D. Colo. 1988)(citing to Fed. R. App. P. 1(a).  Petitioner would therefore be unable to invoke Rule 23 (c) of the Federal Rules of Appellate Procedure to obtain release on bond.  In any event, to receive bond pending a decision on the merits of a habeas corpus petition, a petitioner must show a substantial claim of law based on the facts and exceptional circumstances justifying special treatment in the interest of justice. *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993)(*quoting Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990)).  There will be few occasions where a habeas petitioner meets this standard. *Dotson*, 900 F. 2d at

79.  Federal courts may grant bail when granting the writ. *See Sizemore v. District Court,* 735 F. 2d 204, 208 (6th Cir. 1984).  By implication, a federal court should not grant bail under other circumstances.  In light of the fact that petitioner is unable to establish that he will prevail on the merits of his claims, (*See, infra*), he is not entitled to release on bail. *See Nieves v. Thomas,* 256 F. Supp. 2d 269, 271 (S.D.N.Y. 2003).

**C.  Claim # 1.  The trial court error claims.**

In his first claim, petitioner alleges that the trial court judge committed various errors which denied him a fair trial.

Petitioner first claims that his initial statement to Detective Lutz should have been suppressed because Detective Lutz failed to advise him of his *Miranda* warnings prior to obtaining his statement.  Respondent contends that this claim is procedurally defaulted, because petitioner failed to object to the admission of this statement at trial, and the Michigan Court of Appeals relied on this failure to object, at least in part, in rejecting petitioner's claim.

In this case, petitioner claims that his trial counsel was ineffective for failing to file a motion to suppress his statement to Detective Lutz on the ground that his *Miranda* warnings had not been given to him (*See* Issue II, *infra*).  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich.

8

2004).

In rejecting petitioner's claim under plain error review, the Michigan Court of Appeals ruled that *Miranda* warnings were not required, because under the totality of the circumstances, petitioner was not in custody when he spoke with Detective Lutz. The Michigan Court of Appeals noted that Detective Lutz testified that when he first contacted petitioner at his home, he informed petitioner that he wanted to speak with him about accusations of inappropriate touching and asked petitioner if he would come to the police station for an interview. Petitioner chose to follow Detective Lutz to the police station in his own car. Before the interview, Detective Lutz told petitioner that he was free to go, that the statement was voluntary, and that, no matter the information that petitioner gave to the police, he would be free to leave and go home. The Michigan Court of Appeals further ruled that the mere fact that this questioning occurred at a police station did not require the administration of *Miranda* warnings. The Michigan Court of Appeals also held that Detective Lutz' subjective hope, which he admitted to at trial, that petitioner would decide to speak freely without an attorney, was not relevant to determining whether petitioner reasonably believed that he either was or was not free to leave, so as to require the giving of *Miranda* warnings. *People v. Thatcher,* Slip. Op. at * 3.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of

9

his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.
> *Miranda,* 384 U.S. at 444.

Police officers, however, are not required to administer *Miranda* warnings to every person whom they question nor are they required to administer *Miranda* warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F. 3d 604, 632 (6th Cir. 2003). Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

In *Yarborough v. Alvarado,* 124 S. Ct. 2140 (2004), the Supreme Court held that a California appeals court did not unreasonably apply clearly established federal law, so as to permit federal habeas relief, when it held that a 17-year-old suspect had not been in custody when police conducted a non-Mirandized initial interview, even though the

10

interview lasted two hours and occurred at a police station and the habeas petitioner was not informed that he was free to leave. In so holding, the Supreme Court noted that the petitioner's parents rather than the police transported him to the police station, the petitioner was not required to appear at a particular time, the petitioner's parents remained in the station's lobby during the interview, the police were not coercive or threatening and twice asked the petitioner if he wanted to take break, and the petitioner went home post-interview. *Id.* at 2149-50.

In the present case, the Michigan Court of Appeals' ruling that petitioner was not subjected to custodial interrogation, so as to require the giving of *Miranda* warnings, was not an unreasonable application of clearly established federal law. Petitioner agreed to follow Detective Lutz to the police station in his own motor vehicle. Detective Lutz informed petitioner that he was free to leave at any time, that any statement from petitioner would be entirely voluntary, and regardless of what information petitioner provided, he would be permitted to leave the station and go home. The mere fact that Detective Lutz admitted that he did not give petitioner his *Miranda* warnings because he did not want petitioner to ask for a lawyer does not alter this conclusion. As the Michigan Court of Appeals indicated in its opinion, the initial determination of whether a suspect is in custody, for purposes of *Miranda*, depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer. *See Stansbury v. California,* 511 U.S. 318, 323 (1994). Stated differently, a policeman's unarticulated plan has no bearing upon whether a suspect is "in custody," so as to require *Miranda* warnings. Instead,

11

the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *See Berkemer v. McCarty,* 468 U.S. 420, 442 (1984). Because there was nothing about the circumstances of the first interview with Detective Lutz that would lead a reasonable person to feel that he was not free to leave, Detective Lutz' subjective intentions or motivations were irrelevant to determine whether *Miranda* warnings should have been given. Accordingly, petitioner is not entitled to habeas relief on this portion of his first claim.

Petitioner also claims that his later videotaped interview conducted by Trooper Flohr should have been excluded because it violated Michigan's eavesdropping statutes, M.C.LA. 750.539a, *et. seq.* The Michigan Court of Appeals rejected this claim, finding that the officer who participated in the videotaped interview was not an "eavesdropper" within the meaning of the statute and, therefore, did not violate M.C.L.A. 750.539c. *People v. Thatcher,* Slip. Op. at * 3 (citing M.C.L.A. 750.539a(2)(additional citations omitted). Further, pursuant to M.C.L.A. 750.539g, the fact that another officer viewed the conversation over a closed-circuit television provided petitioner no basis for relief. *Id.*

Petitioner's claim fails for several reasons. First, a criminal suspect has no right not to be videotaped during a custodial interrogation. *See Robinson v. Trast,* 128 F. Supp. 2d 710, 718 (D. Kan. 2001).

Secondly, the mere fact that Trooper Flohr did not advise petitioner, prior to questioning, that his interview was being secretly videotaped, would not render petitioner's statement inadmissible under *Miranda.* Recording a police interview on videotape without

12

informing a defendant does not automatically render his statement involuntary and inadmissible, where a defendant validly waives his *Miranda* rights. *See Matthews v. State,* 268 Ga. 798, 800; 493 S.E. 2d 136 (Ga. 1997). *See also Carswell v. State,* 268 Ga. 531, 533; 491 S.E. 2d 343 (Ga. 1997)(defendant's statements were not subject to suppression merely because he was not informed that his interrogation by law enforcement personnel was being recorded; there could be no reasonable subjective expectation of privacy associated with defendant's statements made during interrogation held in a police station). [2]

Finally, any Fourth Amendment challenge to the admission of the videotaped statement is non-cognizable on federal habeas review.   A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).

In the present case, petitioner's trial counsel objected to the admission of petitioner's videotaped interview under Michigan's eavesdropping statutes and the trial court considered and rejected that objection.  As mentioned above, the Michigan Court of Appeals reviewed

---

[2] When there is paucity of federal law on a subject, state decisions interpreting the Federal Constitution, while not binding on a federal court, are persuasive. *See Millender v. Adams*, 187 F. Supp. 2d 852, 874, fn. 6 (E.D. Mich. 2002).

13

and rejected petitioner's eavesdropping claim on direct appeal.  Because petitioner had an opportunity under Michigan law to challenge the admission of his videotaped interview as a form of illegal eavesdropping, he is not entitled to habeas relief on any claim that the admission of this videotape into evidence violated his Fourth Amendment rights. *See e.g.* *Crawford v. Artuz,* 165 F. Supp. 2d 627, 637 (S.D.N.Y. 2001).

Petitioner next contends that the prosecutor's expert witness, Dr. Steven Guertin, committed perjury, because his trial testimony concerning his physical findings regarding the victim were different than the findings in his initial report.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).  A habeas petitioner has the burden of establishing a  *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

14

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe v. Bell*, 161 F. 3d at 343; *Malcum v. Burt,* 276 F. Supp. 2d at 684.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum,* 276 F. Supp. 2d at 684 (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

In the present case, petitioner has failed to show that Dr. Guertin committed perjury when he testified at trial.  Petitioner claims that Dr. Guertin testified falsely when he testified at trial that the findings of his physical examination of the victim would support a finding that there had been either digital or penile penetration.  Petitioner claims that Dr. Guertin's testimony was contradicted by his earlier medical report, in which he indicated that the areas in and around the victim's vagina were normal, there was no signs of old or acute injury, and the victim's hymen appeared to be intact.  However, a review of Dr. Guertin's report also shows that Dr. Guertin noted focal narrowing at the hymenal posterior midline.  At trial, Dr. Guertin testified that the focal area of the victim's hymen was narrower at the lower part, which Dr. Guertin testified would be consistent with either digital or penile penetration.  Dr. Guertin further testified that this focal area where the victim's hymen narrowed could have actually been a healed area of the hymen.  Dr. Guertin concluded that this finding could be consistent with a person engaging in full intercourse with the victim, although he acknowledged that he could not be absolutely certain of that.

15

(Tr. I, pp. 184-85).

In the present case, petitioner has failed to show that Dr. Guertin's earlier findings were inconsistent with his trial testimony. Accordingly, his perjury claim is without merit.

Petitioner lastly contends that the trial court judge was biased against him. The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F. 3d 436, 438 (7th Cir. 1995). Adverse rulings, however, are not themselves sufficient to establish bias or prejudice which will disqualify a judge. *Vliet v. Renico*, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002); *Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

The only evidence that petitioner offers in support of his judicial bias claim is the fact that the trial court judge admitted the evidence that petitioner contends should have been excluded. Because a trial court's adverse rulings do not establish judicial bias, petitioner is not entitled to habeas relief on his first claim.

### D. Claim # 2. The ineffective assistance of trial counsel claims.

Petitioner next contends that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the

16

defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.   Second, the defendant must show that such performance prejudiced his defense. *Id*.

Petitioner first contends that his counsel was ineffective for failing to file a motion to suppress his first statement to Detective Lutz, on the ground that petitioner had not been informed of his *Miranda* warnings prior to making this first statement.  As this Court already noted, *Miranda* warnings were not required in this case, because petitioner was not subjected to custodial interrrogation by Detective Lutz.  Because petitioner was not in custody when he made his statements to Detective Lutz, he cannot establish that the statements should have been suppressed.  Therefore, petitioner cannot demonstrate that he was prejudiced by counsel's failure to move for suppression of his first statement because of Detective Lutz' failure to advise him of his *Miranda* warnings. *See Hargrave-Thomas v. Yukins,* 236 F. Supp. 2d 750, 775 (E.D. Mich. 2002); *rev'd on other grds,* 374 F. 3d 383 (6th Cir. 2004); *cert. den.* 125 S. Ct. 1827 (2005).

To the extent that petitioner is alleging that his trial counsel was ineffective for failing to object to the admission of his second, videotaped statement, on the grounds that it violated Michigan's eavesdropping statute, this claim is defeated by the fact that trial counsel did, in fact, raise an objection to the admission of this videotaped statement on such grounds.  Moreover, the Michigan Court of Appeals reviewed the merits of this claim on

17

petitioner's direct appeal. Any alleged failure by counsel to preserve objections to an issue is not prejudicial where the state appellate court considers the defendant's claim on appeal. *See Hartey v. Vaughn,* 186 F. 3d 367, 373 (3rd Cir. 1999). Because the merits of this claim was reviewed and rejected by the Michigan Court of Appeals, petitioner is unable to establish any prejudice from any alleged failure to object.

Petitioner next contends that his trial counsel was ineffective for failing to impeach Dr. Guertin's testimony with his prior medical reports, in which petitioner contends that Dr. Guertin had stated that there was no evidence that petitioner committed sexual penetration or misconduct against the victim.

The failure by trial counsel to cross-examine a prosecution witness can constitute ineffective assistance of counsel. *Hence v. Smith*, 37 F. Supp. 970, 983 (E.D. Mich. 1999). However, "[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

As mentioned when addressing petitioner's first claim, petitioner has failed to show that Dr. Guertin's trial testimony was inconsistent with the findings contained in his medical report. In this report, Dr. Guertin specifically found focal narrowing at the hymenal posterior midline. At trial, Dr. Guertin testified that this finding could be consistent with sexual intercourse, although he acknowledged that he could not be absolutely certain.

18

Moreover, the absence of any injury to the victim's vaginal area would not necessarily have exculpated petitioner of these crimes. Under Michigan law, a person is guilty of first-degree criminal sexual conduct if he or she engages in sexual penetration of another person and the other person is under 13 years of age. *See Greenwell v. Elo,* 77 Fed. Appx. 790, 792 (6th Cir. 2003)(citing Mich. Comp. Laws 750.520b(1)(a)). Sexual penetration, as defined in Michigan for purposes of first-degree criminal sexual conduct, is any intrusion, however slight, of any part of a person's body or any object into the genital or anal openings of another person's body. *See People v. Hammons*, 210 Mich. App. 554, 557; 534 N. W. 2d 183 (1995). Because Michigan law only requires a slight intrusion into the genital openings of a sexual assault victim, counsel was not ineffective in failing to question Dr. Guertin about the lack of injury to the victim's vaginal area, because such evidence would not necessarily have exculpated petitioner of these crimes. *See Molina Rosa v. Avila Rodriguez,* 716 F. Supp. 55, 57-58 (D. Puerto Rico)(Objection by rape defendant's counsel to medical report allegedly describing victim's hymen as intact and stating she was still a virgin did not constitute ineffective assistance; objection was tactical decision and, moreover, evidence was not necessarily exculpatory since only a small degree of penetration was required for felony of rape under Puerto Rico's rape law and penetration did not always rupture hymen).

Finally, in light of the other evidence in this case, including petitioner's own admissions to the police, any failure to cross-examine Dr. Guertin about any alleged inconsistencies between his trial testimony and his medical report did not prejudice

19

petitioner. Petitioner's ineffective assistance of counsel claim must fail, because even if counsel was deficient in failing to cross-examine Dr. Guertin more extensively, petitioner has failed to demonstrate any reasonable probability that a more extended cross-examination of this witness by defense counsel would have affected the result of the proceeding. *Moss v. Hofbauer,* 286 F. 3d 851, 866 (6th Cir. 2002).

Petitioner lastly alleges that trial counsel was ineffective for failing to investigate and to present evidence that the victim had made false sexual assault allegations against other persons in the past. Petitioner's claim fails for several reasons. To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result. *Malcum v. Burt*, 276 Supp. 2d at 679. A habeas petitioner's speculations as to what unnamed witnesses might have said, without otherwise detailing their testimony, is insufficient to show prejudice, as required to support a claim that counsel was ineffective for failing to call witnesses. *See Veal v. Cooper*, 936 F. Supp. 511, 514-15 (N.D. Ill. 1996). In this case, petitioner has failed to identify the witnesses who would testify about these false sexual allegations, nor has petitioner detailed what these witnesses' testimony would have been. Petitioner's vague and speculative allegations that trial counsel was ineffective for failing to investigate these witnesses do not entitle him to habeas relief. *Dell v. Straub*, 194 F. Supp. 2d at 650.

Secondly, trial counsel did present evidence that the victim had falsely accused others in the past of sexual abuse through the testimony of petitioner's mother. Because

20

petitioner's counsel did present evidence that the victim had purportedly made false sexual allegations in the past, he was not denied the effective assistance of counsel. *See Culley v. Lampert,* 132 Fed. Appx. 164, 165 (9th Cir. 2005). It does not appear that there is a reasonable probability that additional evidence of false sexual assault allegations, especially those that have not been corroborated, would likely have affected the outcome of this trial. *Id.* Petitioner is not entitled to habeas relief on his second claim.

## IV. <u>CONCLUSION</u>

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A district court has the power to deny a certificate of appealability *sua sponte. Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal

constitutional right with respect to any of the claims.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d at 798.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That The Motion to Invoke F.R.A.P. 23 (c) is **DENIED.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/John Corbett O'Meara
John Corbett O'Meara
United States District Judge

Dated:  August 19, 2005

22